THOMAS SNOWDEN, RESPONDENT, *v.* PLEASANT
VALLEY COAL CO., APPELLANT.

1. *Negligence—Evidence of—General Objections—Exceptions to the
    Rule.*

In an action for damages arising on account of injuries received
in a mine, evidence of defendant's negligence and omissions of
duty at another time and place neither prove nor tend to prove
a particular neglect complained of, since it tends to draw the

minds of the jury away from the main facts in issue, and since the adverse party, having no notice of such a class of evidence, is not prepared to meet it.

2. *Id.*

Testimony of a conversation concerning a transaction which had no connection with the circumstances of which plaintiff complains, and which occurred at another time and place, should have been excluded.

3. *General Objections—Exceptions to—The Rule of.*

General objections to the admission of evidence are unavailable to the party making them, either on motion for a new trial or appeal. The particular grounds of the objection should be stated, so that the trial court may understand the nature of the objection before passing upon it. But the rule is subject to the exception that, if the evidence is clearly inadmissible for any purpose, a general objection will be sufficient.

(No. 886. Decided March 1, 1898.)

Appeal from the Third district court, Salt Lake county. A. N. Cherry, *Judge.*

Action by Thomas Snowden against the Pleasant Valley Coal Company. Judgment for plaintiff, and defendant appeals. *Reversed.*

*Bennett, Harkness, Howat, Bradley & Richards,* for appellant.

*Moyle, Zane & Costigan,* for respondent.

MINER, J.:

This action was brought to recover damages claimed to have been sustained by the plaintiff while working in defendant's mine in April, 1896. The plaintiff and one Fowler had worked a room about 20 feet wide into a coal vein, and were working in a cross-cut about 25 feet wide at the time of the accident. They were paid by the ton. The company furnished the timbers, and they were re-

quired to do their own timbering, and keep the roof in good condition, and free from loose rock. Between the vein of coal and the sandstone roof there was a thin stratum of slack rock, called "clod." This was but a few inches thick. This layer, when not taken down, was required to be supported with timbers and posts with caps. The sandstone roof did not require timbering. Timbers were provided the plaintiff for this purpose, and his duty was to timber up such places as he worked. Before the accident, one Pugh, another workman, had discharged a shot that blew a hole into the partition separating plaintiff's room from Pugh's room. This shot blew out some posts in plaintiff's room, and in consequence a thin layer of clod below the sandstone roof fell. Fowler states that after this he spoke to the foreman about the roof, and was informed that the roof where the clod fell, being of sandstone, was safe. It was about 30 to 40 feet from where the plaintiff was working to where the shot was fired. After these timbers were blown out, plaintiff and Fowler continued to work at the face of the vein, and continued placing timbers there up to the time of the accident. At the time of the accident, plaintiff says he was at the face of the cross-cut loading coal; but this, as is nearly all of the testimony of the plaintiff, is disputed. He says that the clod fell from behind where he was at work, in a locality where the timbers were standing, between the timbers and the face of the cross-cut. The timbers were put in as soon as they could conveniently be, beyond where the rock fell. After plaintiff had rested his case, Mr. Parmalee, the foreman of the mine, was called by the defendant, and testified, in substance, that since 1883 it was and had been a rule in the mine that the miners should keep the roof, at the face where they were working, free from loose rock, and place

therein props and cap posts to support the roof in the face of their rooms back as far as the ends of the room. Witness says he saw the timbers, after the partition was blown out, about five times, before the accident. At the place where the plaintiff was working the props were in good condition. That it was not necessary, in a room 20 feet wide, to prop up the sandstone roof, or support it, because it was self-supporting at that width. That the blowing out of the two caps and the props in the room would not affect the roof at the face of the cross-cut where the plaintiff was at work, because the roof was timbered there; and that no additional weight was thrown on the timbers where plaintiff was at work, which was from 30 to 40 feet away. Witness further testified that he had been foreman of the mine about eight years. Upon cross-examination of this witness by plaintiff's counsel, the following questions were put and answered: "Q. You have known of a great number of accidents where this clod has fallen since its formation? A. Yes, sir. Q. A number of men you know have been injured by the clod falling from the roof? A. Yes, sir. Q. You know of how many different men that have been injured by the clod falling there? A. I couldn't give the number. Q. About how many? A. In what length of time? Q. Well, since you have been foreman. A. I should judge about eight." Each of these questions was objected to as being incompetent, immaterial, and not cross-examination. Objections were overruled, and exceptions taken, and error is assigned upon the ruling. Upon the redirect examination of the same witness by counsel for the defendant he was asked the following question: "How many men were employed in this mine since you became foreman?" The question was objected to by counsel for the plaintiff on the ground that it was irrelevant and immaterial.

16 UTAH—24

The objection was sustained, and an exception taken by the defendant. Where it is not shown by other testimony that a defendant had actual notice or knowledge of the dangerous defect which caused another injury at the time of the accident, it is sometimes competent to show that other accidents had previously occurred at the same place, for the purpose of charging the defendant with notice or knowledge of the defective or dangerous condition of the place where the injury occurred at the time. But in this proceeding the testimony had no reference to the time or place where the accident complained of occurred. There appears to be nothing in the testimony of the witness on direct examination that would make the fact shown proper on cross-examination, nor does it appear that the testimony as to how many men had been injured had reference to the place complained of at or prior to the time of the accident. Under objection the witness was allowed to state how many men had been injured by clods falling from the roof during the eight years that he had been foreman. The particular locality was evidently of recent origin. If eight men had been injured, it does not appear when or where they were injured. They may have been injured five or eight years prior to this accident. Such testimony had no relevancy to the question at issue,—as to whether or not the place where the plaintiff was injured was dangerous or not,— nor does it show that the plaintiff believed it was not dangerous. There is no dispute but that timbers were furnished the plaintiff, and put up by him, for the purpose of supporting the clod, be cause this clod was dangerous. No testimony was offered tending to show that the sandstone roof required timbering, or that any danger arose from its not being propped. It was not disputed that the clod or thin layer between the coal and the sandstone

was dangerous, and required propping or to be taken down. The plaintiff could not rely upon negligent acts before the time of the injury. The question was whether there was negligence at this time and place where the plaintiff was injured; not whether defendant was negligent one or eight years previous. No previous omissions of duty at another time and place prove or tend to prove the particular neglect complained of. These facts were collateral to the main issue, and should have been excluded for the reason that such evidence tends to draw the minds of the jury away from the main issues, and to excite prejudice, and mislead them, and because the adverse party, having no notice of such a class of evidence, is not prepared to meet it. We can see no purpose for which this testimony was material. 1 Greenl. Ev. §§ 52, 448; *Sullivan* v. *Salt Lake City*, 13 Utah 122; *Parker* v. *Publishing Co.*, 69 Me. 173; *Wise* v. *Ackerman* (Md.), 25 Atl. 424; *Dye* v. *Railroad Co.*, 130 N. Y. 671; *Henderson* v. *Railroad Co.*, 59 Ia. 581.

If it was material for the plaintiff to show that eight men were injured while working in the mine during the eight years the forman had charge of it, as bearing upon the degree or extent of the defendant's negligence during that period, it was equally competent for the defense to show on cross-examination by the witness how many men in all were employed in the mine as bearing upon the per cent of accidents or injury to them as compared with the number employed. The admission of testimony showing how many men had been injured in the mine during the time the witness had been foreman being improper, the testimony offered showing the number of men employed during that time would also be improper.

Plaintiff was also allowed, under objection that it was incompetent and irrelevant, to testify to a conversation

which he said he had with the foreman in regard to the clod which fell from the roof in the cross-cut by reason of the timbering having been blown out, several days before the accident, by the explosion of the blast in Pugh's room, adjoining the room where plaintiff was working. Plaintiff says he told the foreman that it was not right that he should have to work for nothing in clearing out the clod that had fallen through Pugh's blast, and that the foreman replied that "I could either load it or let it alone; that, if I did not want to do it, I could get out." This answer was obtained after repeated questions had been propounded to the witness concerning the amount of work he performed without pay in clearing out the clod. This testimony had no connection with the falling of the rock upon the plaintiff, causing the injury at a subsequent time, and at another place, but was a transaction entirely disconnected with the issues in the case, and was calculated to prejudice the jury against the defendant for imposing what might be termed hard and unreasonable conditions upon the plaintiff. This testimony was improper, and should have been excluded. Respondent contends that the objections made to the questions put were too general, and that no specific grounds were stated why the evidence was incompetent and immaterial. This court held in the case of *Culmer* v. *Clift*, 14 Utah, 291, that: "The point of the objection should have been particularly stated, in order to entitle it to consideration. This is the uniform rule. General objections to the admission of evidence are unavailable to the party making them, either on motion for new trial or appeal. The particular grounds of the objection must be stated, so that the trial court may understand the nature of the objection before passing upon it." *Kiler* v. *Kimbal*, 10 Cal. 268; *Frier* v. *Jackson*, 8 Johns. 498; *Camden* v.

*Doremus,* 3 How. 515; 1 Greenl. Ev., § 421; *State* v. *Moore* (Mo. Sup.), 22 S. W. 1086; *Railway Co.* v. *Henson,* 7 C. C. A. 349; *Crocker* v. *Carpenter* (Cal.), 33 Pac. 271; *U. S.* v. *McMasters,* 4 Wall. 680; *Curry* v. *Bratney,* 29 Ind. 195; 8 Enc. Pl. & Prac. 218, 226.

The rule as announced in *Culmer* v. *Clift* is the general rule. This rule is subject to the exception that, if the evidence is clearly inadmissible for any purpose, a general objection will be sufficient. The inadmissibility of this evidence was apparent on its face. Under such circumstances the court is not obliged to cast about and hunt up a ground for excluding it. The objection that it was not proper cross-examination was sufficiently explicit. 8 Enc. Pl. & Prac. 228; *Nightingale* v. *Scannell,* 18 Cal. 315; *Brumley* v. *Flint,* 87 Cal. 471; *Alcorn* v. *Railway Co.* (Mo. Sup.), 16 S. W. 229; *Hodges* v. *Hodges* (N. C.), 11 S. E. 364; *Railway Co.* v. *Street* (Ark.), 31 S. W. 571; *King* v. *Nichols* (Minn.), 55 N. W. 607; *Dooley* v. *Moan,* 11 N. Y. Sup. 339; *Rush* v. *French* (Ariz.), 25 Pac. 816; *McDermott* v. *Judy,* 67 Mo. App. 647; *State* v. *Soule,* 14 Nev. 453.

The judgment of the court below is reversed, and the cause is remanded, with directions to the court below to vacate and set aside the judgment, and grant a new trial.

BARTCH, J., and McCARTY, District Judge, concur.