CHAMBERLAIN, Respondent, vs. THE PRUDENTIAL INSURANCE. COMPANY OF AMERICA, Appellant.

*January 8 — February 1, 1901.*

*Life insurance: Contracts: Independent oral agreement: Consideration: Evidence: Transaction with person since deceased.*

1. A written application for insurance, signed by the insured, and a receipt for the first premium given at the same time by the agent of the insurer, each containing a provision that the company incurs no obligation by reason of any payment of premium unless the application is accepted and a policy granted and delivered, constitute a written contract between the parties, binding upon the applicant and those claiming under him, in the absence of fraud, and their effect cannot be varied by evidence that the agent said that the insurance would go into effect at once; nor can such oral agreement be sustained as an independent contract, in addition to that contained in the writings, there being no consideration to support it. *Mathers v. Union M. A. Asso.* 78 Wis. 588, so far as it holds to the contrary, overruled.

2. A life insurance company does not sustain its liability on a policy from, through, or under the insured; and the plaintiff, in an action on the policy, is therefore not precluded by sec. 4069, Stats. 1898, from testifying to transactions between the insured and an agent of the defendant.

APPEAL from a judgment of the circuit court for Milwaukee county: D. H. JOHNSON, Circuit Judge. *Reversed.*

Chamberlain vs. The Prudential Ins. Co. of America.

This is an action on an alleged oral contract of life insurance. The plaintiff is the widow of one Henry C. Chamberlain, who was accidentally killed in a railway accident on the 2d of May, 1899, and the defendant is a foreign life insurance company. The evidence of the plaintiff showed that on the 25th of April, 1899, one W. J. Cameron, an agent of the defendant, called on the deceased at his home in Milwaukee, and solicited life insurance; that as a result of the conversation between Cameron and Chamberlain, most of which conversation was in the plaintiff's presence, Chamberlain consented to take $500 insurance on his life, at a premium of thirty-five cents per week; that the agent thereupon produced a printed blank application, with numerous questions as to the health of the deceased, which he (the agent) filled out according to the answers of Chamberlain, whereupon Chamberlain signed the same and handed it back to the agent without reading it, and paid the agent thirty-five cents; that this application contained the following clause: "I further agree that no obligation shall exist against said company on account of this application, although I may have paid premiums thereon, unless said company shall issue a policy in pursuance thereof, and the same is delivered to me." The agent then tore off a printed receipt from the foot of the application, signed it, and handed it to Chamberlain; and Chamberlain took it, without reading, and handed it to the plaintiff, who kept it. This receipt was in words and figures as follows:

*The Prudential Insurance Company of America.*

Home Office, 761–769 Broad Street, Newark, N. J.
No. ——.                                April 25, 1899.

Received from H. C. Chamberlain 35 cents, which is a payment on account of application this day made for insurance in the above-named company. No obligation is incurred by said company by reason of this payment unless said application is accepted and a policy is granted and delivered.

Chamberlain vs. The Prudential Ins. Co. of America.

Upon the back of the receipt appeared the following:

" Unless you receive your policy or your money is returned within three weeks from the date of this receipt, please notify the company, giving name of agent, amount paid, and the date when paid."

The plaintiff testified that during the conversation the agent said that the insurance was a paid-up policy, and in eight years he would get back $350, or in case of death $500, that, " if my husband was killed that night, the next day I would get $500; that the insurance commenced the time we paid thirty-five cents premium; " that the agent repeated two or three times, " that, if my husband was killed that night, the next day I would get $500."

In the evening of the same day a physician called upon Chamberlain with the application, and made a physical examination, and asked some questions as to Chamberlain's health, and filled in the answers given upon the physician's blank, which was signed by the physician and Chamberlain. The application was forwarded by the agent to the company, but no policy was ever issued, because the company was dissatisfied with one of the physician's answers.

About a week after Chamberlain's death some person, representing himself to be *Mrs. Chamberlain's* agent, called on the defendant's agent in Milwaukee with the receipt, and asked that the insurance be paid. Payment was refused, but the defendant's agent tendered to the person the thirty-five cents' premium, which, however, he refused to take. The plaintiff denied authorizing any one to make this demand. On May 18, 1899, the plaintiff's attorneys gave notice by mail of Chamberlain's death, and requested blanks for the making of proofs, but the defendant company denied liability because the application never had been acted upon and no policy had been issued. This action was thereupon brought.

The defendant paid the thirty-five cents into court, and after the hearing of the testimony the trial court directed a

verdict for the plaintiff for $500 and interest, and the defendant appeals.

For the appellant there was a brief by *McElroy & Eschweiler*, attorneys, and *Van Dyke & Van Dyke & Carter*, of counsel, and oral argument by *W. D. Van Dyke.*

For the respondent there was a brief by *Quarles, Spence & Quarles*, and oral argument by *W. C. Quarles.*

WINSLOW, J.    While this was in form an action to establish and enforce an oral contract of life insurance, it was in fact an attempt to alter the terms of a written contract by parol evidence.    That the application of Chamberlain, and the receipt given by the agent of the defendant, constituted a written contract which was certain in its terms, cannot be doubted.    This contract, in substance, was that, if the company accepted the application and issued a policy thereon, Chamberlain was to be insured in the sum of $500 thereby, and the thirty-five cents would constitute the first week's premium; but, if the application was not accepted, then the company incurred no obligation.    There was no fraud claimed or proven.    The most that was claimed was that Chamberlain did not read either the application or the receipt, and that the agent said that the insurance would go into effect at once.    But parties cannot thus escape the effect of written contracts.    Chamberlain could read, and he was clearly guilty of negligence in not ascertaining what agreements the written papers contained, and neither he nor those claiming under him can escape the effects of that negligence.    The written contract is binding and must control.    If, under the circumstances disclosed here, written contracts could be set aside, they would be of little value.    *Dowagiac Mfg. Co. v. Schroeder*, 108 Wis. 109.    Nor is there room to say that the evidence tended to prove an oral contract of present insurance in consideration of thirty-five cents paid, in addition to the application for a written policy of insurance.    There

was but one amount of thirty-five cents paid, and that, as the receipt states, was paid on account of the application for the written policy of insurance. Being so paid and applied by the parties, it manifestly could not serve as a consideration for the separate oral contract; so the oral contract, even if made, would be without consideration to support it.

The case of *Mathers v. Union M. A. Asso.* 78 Wis. 588, was relied on by respondent as supporting the recovery in this case, and it seems probable that the direction of the verdict in this case was based upon that decision. The facts in that case were somewhat different from those now before us, yet it must, in fairness, be admitted that some things said in the opinion tend to justify the ruling of the trial court in this case. Careful consideration, however, brings us to the conclusion that, so far as the decision in that case conflicts with the conclusions now reached, it must be considered as overruled.

The plaintiff was allowed to testify, against objection and exception, to the conversation between her husband and the agent of the defendant, and this ruling is now assigned as error. The objection made was that the testimony was inadmissible under sec. 4069, Stats. 1898, which excludes testimony of a party as to transactions personally had with a deceased person when the opposite party "sustains his liability" from, through, or under such deceased person. The question is, Does the insurance company, in any sense, sustain its liability "from, through, or under" Chamberlain? We do not see how the question can be answered in the affirmative. It is true that the insurance company was dealing with Chamberlain in the transaction, but it was the opposite party in the deal. It sustained its liability, if any, through its contract with Chamberlain, but in no reasonable meaning of words through or under Chamberlain. We perceive no error in the ruling.

*By the Court.*— Judgment reversed, and action remanded for a new trial.