RETTA STERLING, Respondent, v. THE HEAD CAMP, PACIFIC JURISDICTION, WOODMEN OF THE WORLD, a Corporation, Appellant.

### No. 1548.    (80 Pac. 1110.)

### On Petition for Rehearing.    Denied.*

1.  **Beneficial Associations: Change of Beneficiary.**
    Where the contract between a beneficial association and member provided for a change of the beneficiary by a surrender of the certificate and the issuance of a new one, the motives or reasons which induced the member to attempt to change the beneficiary by permitting his membership to lapse, as a preliminary to taking out a new certificate, instead of following the provisions of the contract, were immaterial on the right of the contemplated beneficiary to recover the insurance money.[1]

2.  **Same: Tender: What Sufficient.**
    Where the constitution, rules, and regulations of a beneficial association required the officer who collected assessments to give official receipts for all money received, and keep stubs of each receipt given by him, and to attest benefit certificates and other official documents, and further required certificates to be signed by another officer before delivery to the member, and the collecting officer kept an office known to the members, where he transacted the business of the order, a tender of dues and assessments

---

*For former opinion, see 28 Utah 505, 80 Pac. 375.
[1]Snowden v. Pleasant Valley Coal Co., 16 Utah 366, 52 Pac. 599; Stoll v. Daly Min. Co., 19 Utah 271, 57 Pac. 295; Linden v. Anchor Min. Co., 20 Utah 134, 58 Pac. 355.

and demand of a certificate, made on the clerk on a
public street, after business hours and away from his office,
at a time and place where he could not comply with the
requirements of the order or furnish the certificate prop-
erly signed, was insufficient to fix the rights, as a mem-
ber, of the person making the tender, or the liability of
the association.

3. Same: Contracts: Construction.
Where a contract consists of several different instruments, each
document will be read and construed with reference to the
others, and the contract will, if possible, be given effect as
a whole.

BARTCH, C. J., dissenting.

●

## (Decided May 24, 1905.)

McCARTY, J.—The respondent in this case has
filed an elaborate and exhaustive petition for a rehear-
ing, in which it is urged with much energy and zeal that
the conclusions arrived at in the opinion written by
Mr. Justice Straup in this case are not supported by
the facts and the law applicable thereto, and are there-
fore erroneous. In view of some of the statements
made and deductions drawn by counsel in their petition,
we deem it proper to make some further observations
respecting the facts in the case upon which plaintiff's
alleged right to recover depends. Mr. Justice Straup
having made an extended statement of the facts in the
opinion written by him, it will not be necessary for us
to restate them here.

It is admitted that John C. Sterling, the deceased,
first became a member of defendant order, camp 53,
in October, 1899. A benefit certificate was duly issued
to him, and he paid the regular dues and assessments and
continued in good standing up to and including the 31st
day of December, 1900, on which date, because of his
failure to keep up and pay his dues and assessments,

he was, by operation of the provisions of his contract of membership and constitution and by-laws of the order, duly suspended. On July 23, 1901, he made a written application, and passed a medical examination, to renew his membership in the order. This application was duly signed by him and approved by the head physician of the order, and in due time a certificate of membership, bearing date of July 29, 1901, in which plaintiff was named as beneficiary, was duly made out in favor of Sterling, and forwarded by the head camp of the order from Denver, Colo., to the clerk of camp 53 here, in Salt Lake City. Now, up to this point, there is absolutely no conflict in the evidence respecting the material facts.

The trial court permitted plaintiff, over defendant's objections, to introduce proof showing why Sterling allowed his membership in the order to lapse because of non-payment of dues and assessments on his part. It appears from the evidence admitted of this point that Sterling desired to cancel his first certificate and take out another with plaintiff as the beneficiary, but his first certificate was in the possession of the party named therein as beneficiary, who refused to surrender the same to Sterling. The benefit certificates issued by the order to its members contain the following provision: "This certificate is hereby made expressly subject to all conditions endorsed thereon, which are hereby made a part hereof, and also to all conditions named in the constitution of said association and by-laws of said camp." Now, section 121 of the constitution of the order provides as follows: "If a member in good standing at any time desires a change of any beneficiary, he shall deliver to the clerk of his camp his benefit certificate, with written instructions endorsed thereon, above his signature, stating the change desired in the name of the beneficiary and requesting the head clerk to cause new benefit certificate to be issued in accordance therewith, and to cancel existing certificate, and shall also deliver to said camp clerk 50 cents, which

amount shall be remitted to the head banker with his next regular remittance with advice to the head auditor. The clerk of his camp shall thereupon sign and forward said certificate so endorsed to the head clerk, who shall thereupon prepare and cause to be signed a new benefit certificate as requested, and forward the same to the camp clerk for delivery to the member. In such case, the head clerk shall make the proper entries upon his certificate register. In case the benefit certificate is lost, destroyed or beyond the member's control, on the member making an affidavit to that effect and waiving all claims under the old certificate, he may have a new certificate issued, either payable to the same beneficiaries or to different beneficiaries, as he may direct, following, as near as practicable, the rule above stated, and paying the same certificate fee.'' Instead of pursuing the course plainly pointed out by the foregoing provisions of the constitution of the order, which were incorporated in and made a part of his contract of membership, Sterling, in January, 1901, after his certificate had lapsed because of non-payment of dues and assessments and himself suspended, sought the advice of the clerk of the local camp, Angus McKellar, who advised him to do what time and his delinquent dues and assessments had already done, ''drop out and become delinquent.'' It also appears that one Hall, a member of the order, went, at Sterling's request, and consulted Clerk McKellar, who informed Hall that it would not be necessary for him to be reinitiated, which he, Hall, communicated to Sterling. Just when this information was conveyed to Sterling does not appear in the record. It is shown, however, that it was after the certificate had lapsed and Sterling suspended. This witness was also permitted to testify, in effect, that Sterling was not familiar with the provisions of the constitution of defendant order. We know of no principle of law, and certainly none has been suggested or pointed out, under which this evidence could properly be admitted. The

constitution and by-laws of the order, which were a part of his contract, provided that if at any time he desired to make a change of any beneficiary named in his certificate he could do so, and his contracts plainly pointed out how such change could be effected. This right having been reserved to him by the terms of his contract, and he having decided to exercise such right, the motives which prompted him were wholly immaterial. Instead of following the course outlined by the terms of his contract to effect a change, he, after his certificate had lapsed, sought the advice of the clerk of the local camp, who had no authority whatever, either express or implied, to speak for the order on the question, or to in any way or manner vary its rules and regulations, and followed his suggestion to "drop out." All these matters respecting why Sterling desired to make a change in the beneficiary of his certificate, and the course which the record shows he voluntarily pursued in order to accomplish such change, as hereinbefore stated, were immaterial and should have been excluded, as they had no legal bearing whatever on the material issues in the case. Not only was it error under the circumstances to admit evidence tending to prove these matters, but they were exploited before the jury in a way and manner which had a tendency to convey the impression that the defendant order, acting through McKellar, its clerk, misled Sterling for the purpose of defrauding him, and the court, in its instructions to the jury, invited their attention to the claim made by plaintiff "that Sterling was an illiterate and unlearned man," of which there is not a scintilla of proof in the entire record; therefore the evidence introduced on this point could not have been other than prejudicial to the defendant. Not only did the testimony respecting these matters tend to prejudice the jury against the defendant, but it also had a tendency to confuse, mislead, and draw their minds away from the real issues in the case. Snowden v. Coal Co., 16 Utah, 366, 52 Pac. 599; Stoll v. Mining Co., 19

Utah, 271, 57 Pac. 295; Linden v. Mining Co., 20 Utah, 134, 58 Pac. 355.

While the court instructed the jury in general terms that the first certificate "became forfeited for the nonpayments of dues and assessments levied and called against the same, and that said certificate has been null and void since the 31st day of December, 1900," and thereby withdrew from their consideration the question of the plaintiff's right to recover on the first certificate, no reference, however, was made to the instructions to the improper and incompetent testimony which had been admitted for the purpose of showing why Sterling became delinquent.

The major portion of counsel's argument for petitioner on the motion for a rehearing is devoted to the discussion of the following propositions: First, "was Sterling excused by the provisions of section 110 of the constitution of defendant order from being reobligated?" and, second, "could the lodge profit by the wrongful act of its clerk in refusing to accept the money offered, and in refusing to deliver the certificate, or did Sterling in law and equity, by his demand and offer, become a member?"

It will be seen by a careful perusal of the evidence in this case most favorable to plaintiff, that Sterling received a notice from McKellar to appear at Saltair at a general meeting or outing to be held at that place by the several camps throughout the State, and be initiated and receive his certificate. Sterling, in response to this notice called, or stopped as he was passing along the street, at a cigar store where McKellar usually spent his evenings, and entered into a conversation with him respecting the certificate in question. The plaintiff on this point testified: "He [referring to Sterling] just went in and asked him about the policy. He [Sterling] said he didn't know he had to be initiated; McKellar said he would have to go to Saltair." And, again, she says: "Why, he told him he would have to go to Saltair, and my husband said he didn't know he would have

to be initiated again; he just had to pay his dues and get his policy; that is the way he understood it.'' There is not one word of evidence in the record which even tends to show that Sterling made any objection to this arrangement of going to Saltair for the purpose of initiation. In fact, plaintiff, further along in her testimony on this point, stated: ''Q. And McKellar said that he should go to Saltair; that he would have to go to the lake to be initiated? Now, that was all that was said? A. That is all I heard that I can remember. . . . Q. And your husband agreed to go, and he did go? A. Yes, sir.'' Neither is there one word or testimony that Sterling demanded his policy, or insisted that he was entitled to receive it on that occasion. True, the plaintiff made the assertion that Sterling ''offered to pay for it,'' but there is not a single fact testified to by either of the witnesses to support this statement, which is nothing more than a conclusion of the witness. Even though it be assumed, which the evidence does not show, that Sterling did tender the money for his dues and assessments and demanded his certificate, under the facts and circumstances of this case it was not such a tender as would relieve him of any further action in the matter, provided he intended to complete his contract and receive his certificate, or to avail himself of the benefits therein named. Section 82 of the constitution of defendant order provides in part as follows: ''The clerk shall attend to the recording and correspondence, and be the accounting officer of the camp. He shall receive and receipt for all such payments in the manner heretofore provided. . . . He shall attest all orders drawn on the banker, and benefit certificates, cards and other official documents and impress the camp seal thereon.'' Section 85 provides: ''He [the camp clerk] is the only officer authorized to give official receipts to members and shall receive no money without giving official receipts. He shall keep stubs of each receipt given by him in regular order. Such receipts and stubs shall be on forms

furnished by the head clerk." Now, the undisputed evidence shows that the office of McKellar, clerk of the local camp of defendant order, is in the Atlas Block, across the street from the cigar stand referred to, at which place he kept the records of the camp. Quoting his own testimony, he says: "In January, 1901, I kept the records and files of the camp at 38 West Second South street, F. E. McGurrin & Co., and was ordinarily present at that office from half past 8 in the morning until between 5 and 6 in the evening. All of the records that were in constant use were kept at that office; that would include the ledger, cash book, minute book, and all the books that I had to use; in other words, I kept everything there except the old files that were left down in the lodgeroom. Prior to coming to my present place of business (May, 1902), these records were kept at this number in the Atlas Block since 1898." While there is evidence in the record which shows that McKellar, in violation of the foregoing rules and regulations of the order, occasionally accepted dues and assessments from the members at the cigar store hereinbefore mentioned, there is not a particle of evidence that he ever signed or delivered a benefit certificate or any other document of the order at that place. The record shows that, under the rules and regulations of the order, before a certificate can be delivered to the applicant after its receipt from the head camp at Denver, it must be signed by the local consul commander of the order, attested by the clerk, and bear the seal of the local camp. At the time it is claimed that Sterling tendered the dues and assessments and demanded his certificate, he was on a public street, after business hours, and away from the office where the records and papers of the order were kept and its business transacted, and McKellar could not, without violating the plain provisions of the constitution of the order, accept Sterling's money. And, even though McKellar on that occasion had been willing to comply with Sterling's demand and deliver to him the certificate without the seal

of the order and the signature of the consul commander, in direct violation of the rules and regulations of the order, and the terms and conditions of the contract under which the certificate was to be delivered, he could not have done so, because he did not have it with him. In other words, the tender and demand were made, if made at all, at a time and place and under conditions which not only precluded McKellar from legally complying with the demand, but rendered it impossible for him to do so. And there is no provision of the constitution or by-laws of the camp, and none in the contract, which made it obligatory upon McKellar to carry about with him, from place to place, after business hours, or at any other time for that matter, the seal, records, files, papers, and documents of the camp in order for him to be prepared to transact its business with the members wherever he might chance to meet them. The record shows that McKellar had an office where the business of the order was transacted, which was known to the members; and whenever they had business to transact with the order, through the clerk, in which money was to be receipted for, and papers and documents signed, sealed, and delivered, it was their duty to apply at the office or place of business where such business could be transacted in accordance with the rules and regulations of the camp. That such is the spirit and intent of the constitution of defendant order is made plain by section 117, which provides: "A candidate must present himself for adoption within four weeks after notice of his acceptance or forfeit his entrance fee, unless excused by a two-thords vote of the camp, but in no case can more than three elapse from date of certificate."

The contention that Sterling would have received his certificate but for the alleged wrongful and arbitrary conduct of McKellar in failing to present to the consul commander, who, it is claimed, would have countersigned the document had it been presented to him, without requiring anything more to be done by Ster-

ling except the payment of his dues and assessments, is not supported by the record. Plaintiff called as a witness W. M. Elliott, who was consul commander of the camp during the time Sterling was a member of the order, and at the time the certificate was received from Denver, and he testified, on cross-examination, in part as follows: "Q. As consul commander, under the rules and regulations of your order, you are required to sign (referring to the certificate), are you not? A. Yes, sir. Q. And when would you be required to sign it? A. In the presence of the member or clerk. Q. And before delivery? A. Yes, sir." On redirect he stated: "Q. Was there any other reason why you did not sign that certificate except that the clerk did not present it and request you to sign it? A. Yes, sir; I suppose that is the reason." On recross-examination he said: "Q. You stated that if the clerk had presented this certificate to you, you would have signed it. Under what circumstances should he have presented it to you? A. He should have signed it, and then I sign it in the presence of the applicant. Q. Of Mr. Sterling in this case? A. Yes, sir. Q. And what other circumstance or act would have been necessary on the part of Sterling? A. The payment of the money." This same witness was called by defendant, and further testified respecting this branch of the case as follows: "I am familiar with the practice of this camp in the matter of taking in members who have forfeited their membership or allowed their membership to lapse. With regard to being obligated again, the custom and practice was to obligate the candidate. Q. How general was this custom, and what proportion of that class did you apply this ruling? A. All of them that came in, so far as I know, during my term of office as consul commander—as presiding officer. In 1898 the question was raised as to how to bring the candidate in, and I decided that the candidate should be obligated again. Q. And the decision stood? A. Yes, sir." Continuing, the witness testified in part as

follows: "My attention was called to section 110 of the constitution, and I made the ruling under that section. . . . I made the ruling on the point that no applicant could go into camp, new or old, unless they were obligated." Other members of the order were called as witnesses, and testified that prior to August, 1901, it was the custom of the camp, before reinstating members whose benefit certificates had lapsed for nonpayment of dues, to reobligate them. John Hobday, a witness for defendant, testified that he had been a member of camp 53 since 1898; that he was a constant attendant at the lodge prior to 1901; that the lodge met once a week during that time; that "the custom is, if a man allows himself to become delinquent and drops out, and calls for reinstatement, that he is taken in again and has to be reobligated, but not formally introduced in the secret work of the protection degree." And again he says: "Since I have been there I should say there have been at least 25 taken in of this class—that is, persons who have allowed their membership to lapse—and they were all required to be reobligated again. Every member taken into camp, taken under any consideration, is obligated." There is nothing in the foregoing testimony that even suggests that Mr. Elliott, the consul commander of camp 53, would have signed, or that it was his duty to sign, the certificate in question without Sterling having first been reobligated. Neither was McKellar, according to the opinion written by Mr. Justice Straup, able to, nor did he, defeat and render null and void the original contract. For the undisputed evidence shows that, before Sterling sought the advice of McKellar, his (Sterling's) first certificate had become forfeited and Sterling suspended because of his failure to pay his dues and assessments, and the trial court so instructed the jury, from which ruling no appeal has been taken. Then the alleged fraud of McKellar in misleading Sterling, and inducing him to

"drop out" of defendant order and let his first certificate lapse and become forfeited, is not before this court.

Counsel for plaintiff mainly base their petition for a rehearing upon the ground that this court, so they claim, erroneously construed the provisions of section 110 of the constitution of defendant order, which provides that: "Member of any camp who has been suspended for more than six months cannot be reinstated, but if he then desires to renew his membership in the order, he must surrender his benefit certificate or make affidavit of its loss or destruction and apply for membership on the same terms as any person who has not been a member of the order, except that he shall not be required to be again formally introduced in the ritual of the protection degree. A delinquent cannot join another camp. He must first be reinstated by his own camp, unless it has surrendered its charter, in which case he · must be reinstated by the head clerk." Counsel insist here, as they do in their original brief in this case, that Sterling was entitled to receive his second certificate from McKellar upon paying the dues and assessments required by the constitution and by-laws of the order, and that the following clause in section 110, "except that he shall not be required to be formally introduced into the ritual of the protection degree," absolved Sterling from again passing through any part of the secret work or ceremonies of the order as a condition precedent to the delivery of the certificate to him. Sterling's written application for membership, the certificate, and the provisions of the constitution of the defendant order all enter into and form whatever contractual relations, if any, may have existed between himself and the defendant. In order to determine what those contractual relations, if any, are, we must consider the several provisions of these different instruments which have any bearing or throw any light upon this vital and most important question in the case. In his written application for renewal of membership we find the following provision:

"I waive for myself and beneficiary all claims for benefit under this application until I shall be approved by the head physician, shall be regularly introduced and deposit an assessment and such other assessments as are required by the constitution and by-laws and receive a certificate of membership in the order." Here is an express and positive waiver on the part of Sterling of all claims for benefit under his written application until he should be regularly introduced. But we are told that this provision of Sterling's application is in conflict with the following portion of section 110: "Except that he shall not be required to be formally introduced in the ritual of the protection degree"—and therefore is a nullity. The rule is elementary that where, as in this case, a contract consists of several different instruments, each document will be read and construed with reference to the others, and the contract as a whole will, if possible, be given effect. Bishop on Contracts, section 382; 9 Cyc. 579, 580, and cases cited. Now, there are other provisions of the constitution of defendant order which must be considered and construed in connection with section 110, and that part of Sterling's written application hereinbefore referred to, in determining whether or not there is a conflict in the terms of these two instruments. Section 131, in part, provides that "the liability of the head camp to any benefit member shall not commence until his actual introduction to the protection degree, receipt of his benefit certificate, and the payment by said member of the introduction fee, camp dues and the advance assessment or assessments levied and payable during the month of his introduction and receipt of certificate;" and said section further provides that "the liability of any benefit member to pay camp dues and assessments shall not commence until such member is introduced in the protection degree and receives his benefit certificate." We have here two provisions of the constitution, one of which provides that the head camp shall not be liable to any benefit member (not, as claimed by counsel for

plaintiff, any "new" benefit member; that is, a person who for the first time has made application for membership) until the actual introduction of the member to the protection degree; the other provides that any benefit member—which includes both classes—shall not be liable for camp dues and assessments until such member is introduced in the protection degree. Section 102 of the constitution provides, among other things, that, for a person to be eligible to membership, "he must be in sound bodily health," and the party in his written application must so state. Section 113, in part, provides that "every person seeking to become a benefit member of the camp shall state, in an application to be signed by him . . . : 'I hereby adopt as my own whether in my handwriting or not all of the foregoing answers and statements . . . and I agree that the truth of said answers and statements and each of them is material to the issuance and validity of said benefit certificate, hereby meaning and intending that said answers and statements and each of them are and shall be taken and construed to be strict warranties.' . . . I waive for myself and my beneficiaries all claims for benefit under this application until I shall be approved by the head physician, shall be regularly introduced and shall deposit an assessment and receive a certificate of membership in the order." The certificates issued by the order, including the one upon which this action is brought, contain the following conditions, which are indorsed thereon: "First: This certificate is issued in consideration of the representations and agreements made by the person named herein in his application to become a member, and in consideration of the payment made when introduced to said camp under prescribed form . . . " "Seventh: If said member dies within one year from the date of certificate, as the result of some disease excepted or concealed in his application for membership, or within one year after reinstatement following suspension, as the result of some diseases existing at the time of such rein-

statement, then no benefits shall be paid on account thereof.''

The record shows that the secret work of the order is quite lengthy, and that the services consist of many different parts. Among the ceremonies which each applicant is required to pass through and adopt is the following obligation, which the defendant claims Sterling should have taken in order to have entitled him to receive his certificate: ''I will faithfuly guard the interests of the camp and the fraternity, and will pay all just and legal demands that may be made upon me for the payment of its expenses and beneficiary obligations. I have not been rejected nor expelled from any camp of this order; that I am in sound bodily health to the best of my knowledge and belief.'' It thus clearly appears that one rule and regulation of the order is to admit only such persons who at the time of taking the obligation are in sound bodily health, and who have not been rejected by nor expelled from any camp of the order. These are some of the conditions that enter into and become a part of the very essence and life of the contract. And every part of the proceedings and ceremonies which relate to the contract of insurance, including the statement of the candidate respecting the condition of his health at the time of his introduction, Sterling was bound to comply with before he was entitled to receive his certificate, unless he was wholly or in part exempted therefrom by the exception found in section 110. This section does not say that a member who has been suspended for more than six months and makes application to renew his membership shall not be required to be introduced into the order before receiving his certificate; it only provides that ''he shall not be required to be again formally introduced into the ritual of the protection degree;'' that is, there are certain formal parts of the ceremonies of an initiatory character which he may dispense with. The record shows that there is much of the ceremonial part of the proceedings which relate to matters that are ex-

·clusively of a fraternal and social character, and have no relation to, nor do they in any way refer to, the contract of insurance, while other parts of the ceremony, as appears from the portions of the "obligation" hereinbefore set out, refer to some of the terms of the contract, and each candidate is required to reaffirm some of the statements and agreements which are set forth in his written application for membership. A portion of the record kept by camp 53, and which contains the proceedings of said camp during the month of August, 1901, was introduced in evidence, and, among other things, contains the following: "Ceremony of Introduction. The watchman reported strangers J. L. Johnson and R. Greames in waiting who were duly obligated and instructed to appear for initiation when notified. Camp closed informally." It will thus be seen that the obligation is no part of the initiatory service. In fact, this is shown by the undisputed evidence. And while Sterling was absolved from being formally introduced into the ritual of the protection degree, it did not excuse him from being reobligated, which the record shows are not one and the same thing. Counsel for petitioner recognize and admit this, for in their original brief in this case they say: "From an examination of the record it is apparent that the introduction in the protection degree embraces two component parts, as it is commonly referred to by the members, one of which is termed the obligation, and the other initiation."

Counsel in their original brief, in the discussion of the case, proceeded upon the theory that Sterling, because of having contributed to the funds of the camp during the time of his membership, was legally entitled to some consideration at the hands of the order, which under its constitution it could not extend to the applicants entering the organization for the first time. And in their petition for a rehearing they say: "Hence it will be seen that contractual rights were already existing between Sterling and the order at the time of his

renewal application. The order held the money that for years he had paid into the reserve fund, and in turn he held an option issued to him by the order and ingrafted into the fundamental laws—an option permitting him to reinstate his membership without the exaction of all the things required of original members." This theory is not only repugnant to the express and plain terms of the certificate upon which this action was brought, but is antagonistic to many of the provisions of the constitution of the order, some of which are hereinbefore set out. Neither does section 110 imply that any contractual relations exist between the order and a member after such member has been suspended for more than six months, because the same section provides that a member who has been suspended for more than six months must apply for membership on the same terms as any person who has not been a member of the order. Then follows the exception hereinbefore mentioned. The order at its pleasure may either accept such applicant or reject him, and, if rejected, he has no legal remedy by which he can compel the order to admit him. Why then the exception in section 110? Counsel for petitioner answer the question when they say, referring to a member who has been suspended for more than six months: "He [referring to Sterling] was already in possession of the secret work—the ritualistic work." And, as we have hereinbefore pointed out, there are portions of the secret work which have no reference to the contract of insurance, nor to the conditions under which the benefit certificates are issued, and refer only to the social and fraternal features of the order. And to these, and these only, the exception in section 110 unquestionably refers.

To give section 110 the construction contended for by plaintiff, would render nugatory many of the provisions of the constitution, as well as some of the conditions set forth in the written and signed application of Sterling, and upon which the certificate in question was signed by the officers of the head camp. And such a

construction would also take away one of the safeguards by which the order is enabled to place each candidate upon his honor at the very time he is being introduced, and require from him a statement respecting the condition of his health, and thereby enable candidates who file applications for a renewal of membership to avoid this test; and in case any candidate of this class becomes ineligible through sickness, or otherwise, between the time his written application is signed and his certificate is ready for delivery, he might, notwithstanding such ineligibilty, become a member, and that, too, without any dissembling on his part. Whereas, construing section 110 as we have, all the provisions of the constitution, the written application, and the benefit certificate are harmonized and given effect. And this construction does not impose upon the applicants for renewal of membership any greater expense, burden, or inconvenience than the construction contended for by plaintiff, unless the mere taking of the obligation by a member is an inconvenience, which we do not think will be seriously contended.

In conclusion, we will say that the reason why a recovery cannot be had in this case, as the record now stands, may be briefly summed up as follows: First. Sterling voluntarily and of his own volition permitted his first certificate to lapse, and he thereby became suspended from the order; and the trial court instructed the jury, and properly so, that all rights under said certificate were forfeited, and a recovery could not be had upon it. Second. When the second certificate was received by the local camp, and Sterling notified to appear at the next ensuing lodge meeting of camp 53 for the purpose of taking the obligation and receiving the certificate, he failed to respond to the notice. Nor did he thereafter, even according to plaintiff's theory of the facts in the case, place himself in a position or make it possible for the officers of the camp to accept his money and deliver him the certificate, without a most flagrant violation of the rules and regulations of the or-

der. Third. When Sterling died he was not, in fact, in law, nor in equity, a member of the order, for the reason that for more than 11 months he had not paid or tendered any dues and assessments, except the introduction fee of $5 paid on his application for renewal of membership. Nor had he up to the time of his death done anything, after the receipt of the certificate by the local camp, to relieve him from the payment of dues and assessments. Fourth. At the time of his death more than five months had elapsed since the certificate was received by the local camp, during which time Sterling failed to present himself at any of the lodge meetings to take the obligation and receive his certificate, as required by section 117, which provides that under no circumstances can a candidate defer taking the obligation for more than three months from date of certificate. And, fifth, because the second certificate had not become and was not an operative or completed contract, because not signed by the local consul commander or by Sterling, the applicant, and was not delivered, all of which were conditions precedent to give it effect.

For the reasons herein stated, the petition for a rehearing is overruled and denied.

STRAUP, J., concurs.

BARTCH, C. J. (dissenting).—Notwithstanding this second elaborate opinion, the fact still remains that the lodge has the money for dues, etc., paid it by the deceased in an honest endeavor to obtain insurance for the object of his bounty, while the beneficiary is deprived of it through mere technicalities resulting from the insured having been misled by the agent of the insurer. Upon an examination of all the evidence, and of other provisions of the constitution of the lodge than those referred to in this opinion of my brethren, I am convinced that a rehearing ought to be granted, and therefore dissent from denying the same.