Aetna Life Insurance Company v. Mrs. Maud E. Hooker.

Decided May 3, 1905.

**1.—Life Insurance—Completion of Contract—Delivery of Policy.**

Where decedent, who had applied for life insurance, executed his note for the premium that would be due and placed it in bank in escrow, to be delivered to the insurance agent when a satisfactory policy was turned over to him by the bank, and there being a question with the insurer as to whether the policy as drawn was in accordance with the terms of the application, a slip correcting the application was attached which the insured was to sign, the forwarding of the policy to the bank did not constitute a delivery, the insured having the right to reject it if not satisfied therewith.

**2.—Same.**

The fact that the insured knew the policy had arrived and was held for him, and that he authorized one person to transfer the policy to another bank and asked another to get the policy from the first bank, neither of these things being done before his death, did not support the conclusion that the policy was satisfactory to him and there was no completed contract.

**4.—Evidence—Expert Testimony—Life Insurance.**

Where a life policy provided for term insurance for nearly a year and then for regular insurance, testimony of an expert stating at which date the age of the insured was to be taken in determining the regular rate of premium was admissible where the meaning so given was not inconsistent with the terms of the instrument and was, according to the statement of the witness, the meaning given by all insurance men.

Appeal from the District Court of Ward. Tried below before Hon. Jas. L. Shepherd.

*J. E. Starley, W. J. Moroney* and *T. B. Love,* for appellant.—A note deposited in escrow, not to be delivered until a "satisfactory" policy

is delivered to the applicant for insurance, can not be considered payment of a premium, when the applicant dies before receiving a policy, and without opportunity to determine whether or not such policy is "satisfactory," and the note is still in escrow when the applicant dies, and the insurance company never receives or accepts the note. Connecticut Mutual Life Ins. Co. v. Rudolph, 45 Texas, 454; Mutual Life Ins. Co. v. Young, 23 Wall, 85; Giddings v. N. W. Mut. Life Ins. Co., 102 U. S., 108; Wainer v. Milford Mut. Fire Ins. Co., 11 L. R. A., 598; McLendon v. Sovereign Camp, etc., 52 L. R. A., 441; Ray v. Security Trust, etc., Co., 29 Ins. L. J., 369; Oliver v. Mutual Life Ins. Co., 28 Ins. L. J., 710; Mullen v. Mutual Ins. Co., 89 Texas, 259; Fitzmaurice v. Insurance Co., 84 Texas, 62; Life Assurance Society v. Cole, 35 S. W. Rep., 720; Insurance Co. v. Wagner, 30 S. W. Rep., 959; Roberts v. Insurance Co., 35 S. W. Rep., 955; Insurance Co. v. Minze, 34 S. W. Rep., 670; Blake v. Insurance Co., 67 Texas, 160; Green v. Hugo, 81 Texas, 457; Tompkins, etc., v. Peter, 84 Texas, 631; East Texas Ins. Co. v. Perky, 24 S. W. Rep., 1080; Laughlin v. Fidelity, etc., Co., 28 S. W. Rep., 411; Union Central Life Ins. Co. v. Chowning, 28 S. W. Rep., 117; Union Central Life Ins. Co. v. Hughes, 70 S. W. Rep., 1010; Roblee v. Masonic Association, 77 N. Y. Supp., 1098; Coker v. Atlas Acc. Ins. Co., 31 S. W. Rep., 703; Kohen v. Mutual Reserve, etc., Assn., 28 Fed. Rep., 705; Rogers, Admr. v. Charter Oak, etc., Co., 41 Conn., 97; Marks v. Hope Mut. Life Ins. Co., 117 Mass., 528.

*T. J. Hefner, P. B. Ward* and *A. J. Wilson,* for appellee.—The sending of a policy to an agent to be delivered to the insured, is a delivery to the insured, in spite of subsequent orders to the agent not to deliver. The fact that there has been no manual delivery is immaterial, and the judgment in this case for plaintiff was warranted by the law and the facts. Brown v. Pridgen, 56 Texas, 127; Mutual Ben. Life Ins. Co. v. Wise, 34 Md., 582; Dove v. Royal Ins. Co., 98 Mich., 122, 57 N. W. Rep., 30; Ide v. Phoenix Ins. Co., 2 Biss (N. S.), 333; Hallock v. Commercial Ins. Co., 26 N. J. L., 268; Penn. Ins. Co. v. Carter, 11 Atl. Rep., 102; Gosch v. State Mut. F. Ins. Assn., 44 Ill. App., 263; McNeilly v. Continental L. Ins. Co., 66 N. Y., 23; Michigan Mut. L. Ins. Co. v. Hall, 60 Ill. App., 159; Hughes v. Farmers' Ins. Co., 4 Ohio Dec., 412; Lee v. Union Cent. L. Ins. Co., 41 S. W. Rep., 319; National L. Ins. Co. v. Twiddle, 58 S. W. Rep., 699; Mutual L. Ins. Co. v. Thompson, 94 Ky., 253; Continental Ins. Co. v. Haynes, 10 Ky. L. Rep., 276; Potter v. Phoenix Ins. Co., 63 Fed. Rep., 382; Equitable Fire Ins. Co. v. Alexander, 12 South., 25; Morrison v. Insurance Co., 64 N. H., 137, 7 Atl., 378.

JAMES, CHIEF JUSTICE.—Action upon a life policy. On August 11, 1903, A. S. Hocker made a written application for a $10,000 policy on his life, in favor of appellee, his wife. In the application is the following: "And I further agree that the insurance hereby applied for shall not be binding upon the company until a policy has been issued, nor until the amount of premium, as stated herein, has been received by said company, or its authorized agent, during my lifetime and good health,

and a receipt given therefor signed by an executive officer of the company; . . . and I understand that all policies and agreements made by said Aetna Life Insurance Company are signed by one or more of its executive officers, and that no other person can grant insurance, or make any agreement binding upon said company."

The application called for term insurance to June 10, 1904, at eighty-nine cents a thousand, and a 20-payment nonparticipating policy for $10,000, at an annual premium of $288 from June 10. At the same time Hocker executed a note for $377, payable June 10, 1904, to the order of J. W. Johnson, a local agent of appellant at Barstow, Texas. This note was placed in the Ward County Bank at Barstow, with agreement signed by J. W. Johnson and A. S. Hocker, as follows: "This note is hereby placed in the Ward County Bank in escrow, and is to be delivered to J. W. Johnson when a satisfactory policy for $10,000 is turned over to A. S. Hocker by said bank."

We may appropriately state in this connection that the amount of this note accurately embraced the premium for the term insurance, $89, and the first annual premium for the year beginning June 10, 1904, which was $288, as determined by Hocker's age at the date of the application, but the latter premium would have been fixed by his age on June 10, 1904, when the regular insurance was to begin, which would have made it $294.40 instead of $288.

A slip appears to have been pasted to the application which provided that the policy should not take effect until the premium for the temporary or term insurance shall have been actually paid during the lifetime and good health of the insured, and within sixty days from August 18, 1903, a receipt for which payment shall be a delivery of the policy, and further: "If any subsequent premium be not paid when due, this policy shall cease and determine, subject to the nonforfeiting features hereinafter described, except that a grace of thirty days, during which time the policy remains in full force, will be allowed for the payment of any premium after the first, provided that, with the payment of such premium, interest is also paid thereon for the days of grace taken, but for any reckoning hereinafter named the time when a premium becomes due shall be the day stipulated therefor on the first page hereof. No premium shall be considered paid unless a receipt shall be given therefor signed by an executive officer of the said company, and if any obligation given in payment or part payment of any premium is not paid when due, this policy shall then cease, and be treated as if no such obligation had been given." The provisions of the slip were embodied in section 1 of the policy.

The testimony is that, in the application, the premium appears to have been originally written $288, the rate applicable to the age of thirty-three years, and marked out, over which was written the figures $294.40, that were applicable to the age of thirty-four years, and the same also appears there in pencil. On the back of the application the premium is expressed as $294.50. The testimony is such as would support a conclusion that the change from $288 to $294.40 was not made in the office of the company's general agent for Texas, at Dallas, to whom it was forwarded from Barstow, nor in the company's office in Hartford, but was made at Barstow before forwarded to Dallas.

Mr. English, the company's secretary, testified that the application of Hocker was not approved because it appeared that the kind of insurance applied for was not specifically described; that the application did not state whether the policy was to be a 20-payment life or a 20-year endowment; that it was also not approved because the premium to be paid was not clearly stated; that for these reasons the application was not approved, but the medical examiner for the company at Hartford did write thereon the word "Approved," and signed his initials thereto, indicating that the risk was satisfactory from a medical standpoint; that the policy was prepared and forwarded to the company's agents at Dallas, Messrs. Farrell & Harris, with instructions to deliver it upon proper correction of the application, on a form which was sent with the policy, to be signed by Hocker and forwarded to the company. The date of this policy was June 10, 1904, the date the regular insurance was to begin, but a rider was attached thereto providing that term insurance should begin when the policy was delivered and the term premium paid. This policy was drawn on the 20-payment life plan, and called for a regular annual premium of $294.40, instead of $288, and that this policy the agents were authorized to deliver when Hocker should sign a request or authority to the company for certain changes in the application which would make the same conform to the policy as actually written; that the following is the letter to said agents: "Enclosed find policy No. 59,612, Hocker. Those against which we have marked 'X' are accompanied with a form for correction of the application. This must be signed by the applicant and forwarded to the company before the policy is delivered. Please give this your personal attention. Yours truly, J. L. English, secretary."

The receipts of the policy and correction slip with the above letter, by the company's agents at Dallas, appears to be a fact clearly established. But there was testimony by circumstances which would carry to the jury the question of fact whether or not these agents sent the policy to Mr. Weaver, of the Ward County Bank, as Hocker's agent, for delivery to him, without reference to any corrections. A few days after Weaver received the policy, and before Hocker called for it, the latter was killed.

The court charged the jury, first, to find for plaintiff if, among other things, defendant, after issuing the policy, forwarded it to the Ward County Bank for and in behalf of Hocker. In other words, the theory upon which this instruction proceeded was that, notwithstanding the private instructions of defendant to its agents, Farrell & Harris, not to deliver the policy until Hocker had signed the correction slip (which instruction Hocker had no knowledge of so far as any testimony indicates), the fact that it was delivered, as it was written, to Weaver for Hocker, would be a consummation of the contract. This view we think was correct. But we are unable to see any other theory of the facts which would lead to defendant's liability. The following are uncontroverted: The application was defaced by a mark striking out the premium of $288 and the insertion of a different premium. The company did not accept the application unconditionally, but with the condition that the applicant sign the correction slip before delivery of the

policy. The company, though willing to insure Hocker according to the application as it appeared, had a perfect right to have any question removed concerning the effect of this defacement of the application. It might have sent the application back, or might have sent back a correction slip, and, until this was executed by the appellant, might have prepared no policy. The course it pursued, however, evidently to accomplish expeditiously the same purpose without delaying the insurance, was to prepare the policy according to the face of the application, and send it on with the correction slip to its general agency in Dallas, with instructions to deliver the policy when the slip was signed by Hocker. This was not such a transmission of the policy as made the contract of insurance complete upon its issuance from Hartford, although drawn in conformity with the application. It was a qualified or conditional acceptance, conditioned on the applicant doing a certain thing before the contract should be closed. This condition, in connection with its acceptance of the application, defendant had a right to impose. It was a matter of its own, which the courts would have no right to control. While matters remained in this condition, and the policy still in the company's hands, or in the hands of its agents, there was no contract of insurance.

Yet, after submitting the case on the theory already considered, viz., that of the delivery of the policy to an agent of Hocker without reference to any slip, the court went further, and charged the jury that, if they found the policy was not delivered to the Ward County Bank for Adam S. Hocker, still to find for plaintiff if they believed, among other things, that the company accepted the application of Hocker and issued the policy, and thereafter held the same for Hocker. Where the foundation for this instruction is in the evidence we fail to see. The uncontradicted evidence was that the company did not accept the application in the state it was, and did not hold the policy for Hocker, nor did its agents to whom it was sent. No act of its agents is shown, except the sending of the policy to Weaver, that could be held a constructive delivery. If Hocker had died while the policy was in the hands of its agents, the fact would, in our opinion, not have shown a completed contract of insurance. (Life Ins. Co. v. Rudolph, 45 Texas, 454.)

The thirteenth assignment of error complains of the admission of certain testimony of an expert in insurance matters. The application was dated August 11, 1903. It called for term insurance to June 10, 1904, and from that date for regular insurance. The policy prepared was dated June 10, 1904, and with it was a rider, dated August 18, 1903, providing for insurance for the intervening period. The testimony the expert gave was: "This policy would be dated June 10, 1904. The application was taken August 11, 1903. June 10, 1904, would be the time to which to charge the term premium—that is, a part of the annual premium—and from then on it would run regular. The application means that, if the application stated the age to be thirty-three years, or if the premium was stated to be $288, that the company would have a right to charge ninety-eight cents a thousand, and $294 premium, which was the rate of the age of thirty-four, and that was the authority for the change. If they accepted his application in which he stated his premium at thirty-three years, they would have a right to figure it

at thirty-four years; ninety-eight cents a thousand would be that much a thousand for the difference in the time. This is the meaning given by all insurance men. There would be no necessity for a change of the age in the application. It would have authorized the company to figure the premium for the age of thirty-four years ·instead of thirty-three years, as stated." The objection was that this was not the subject of expert testimony, and the explanation contradicted the term of the instrument. In view of his statement that the meaning given was that of all insurance men, and such meaning was not inconsistent with the instrument, considered in its entirety and its objects, we think it was admissible. The testimony was introduced for the purpose of showing that the company, by the policy it prepared and sent to Dallas, did not depart from the application. If it had prepared and sent on a policy in materially different terms, the position could well be taken that the application had not been approved or accepted, hence no contract.

On the subject of the sufficiency of the note as a payment of the premium for the term or temporary insurance, we think the evidence such as would, on a proper submission, warrant finding that it satisfied the premium so far as Hocker was concerned. The note given and accepted by the agent was intended to cover the premium for the short term to June 10, 1904, and also the first regular annual premium for the year beginning that date. The note was payable on that date. The first annual premium was not payable until then, and Hocker had until then to pay it, note or no note. The material payment to put the policy in force was that which affected the short term, and the amount of the note given, although .something less than the aggregate of the two premiums, included all of the premium for the short term.

The eighth assignment need not be discussed, as appellee practically admits error (though insisting that it was immaterial), and, as judgment is reversed on the ground indicated above, we presume the question will not arise on another trial. In reference to the fourteenth and fifteenth assignments, we think that the court did not err in excluding the testimony they have reference to, in the absence of some evidence tending to show that Hocker had knowledge concerning defendant's instructions to its agents, contained in its rate book. There was nothing on the face of the paper he signed to convey such notice to him.

*Reversed and remanded.*

### ON APPELLANT'S MOTION FOR REHEARING.

The motion brings into question several of the propositions held in this opinion heretofore delivered; but it appears to us there is but one subject that requires additional discussion. This is whether or not something more was not essential to the contract of insurance than a constructive delivery of the policy to Weaver for Hocker, in view of the agreement affecting the delivery of the note left in escrow, which was: "This note is hereby placed in the Ward County Bank in escrow, and is to be delivered to J. W. Johnson when a satisfactory policy for $10,000 is turned over to A. S. Hocker by said bank." We held in the chief opinion that it was a matter inferable from the testimony, and the cir-

cumstances connected therewith, that the policy had been sent to Weaver and received by him for unconditional delivery to Hocker before the latter's death. The evidence of this, we admit, was slender, but, we think, sufficient to require the issue to be passed on by the jury.

But was such delivery, if any, enough? The note was, by said agreement, withheld by Hocker until a policy that was satisfactory to him was turned over to him. Until this event occurred there was no contract, because until then Hocker was not bound. Until then the note was withheld, and Hocker not obligated thereby for the premium. The testimony relied on as showing that the policy was satisfactory to him consists in the fact that Hocker knew the policy had arrived and was held for him, and that he authorized Judge Gage, in the afternoon of the day he was killed, to transfer the policy from the Ward County Bank to another bank, and on the same day he asked J. A. Stewart to go to the Ward County Bank and get his policy. The next morning both of these gentlemen went to the bank for it, and Mr. Weaver, who was cashier, refused to surrender it. For this testimony it is claimed that it is sufficient, in view of Hocker's inability to testify, to warrant finding that he had seen the policy and was satisfied with it. It seems to us that Hocker's inability to testify would not aid in establishing a fact that required testimony to substantiate it. The above testimony will support a finding that he knew the policy was at the bank and held for him subject to his order. Instead of showing that he had seen it, it rather tends to show the contrary; for, if he had gone to the bank himself, the probability is he would not have had occasion to send someone else for it. There is not a particle of proof in the above testimony that anyone for him had examined the policy. Conjecture is not proof.

It would, in this connection, be insisted that the testimony served to show that, whatever the policy was, he was satisfied with it. It can not, we take it, be denied that, had he taken the policy, or someone for him, he would have been entitled under the agreement to a reasonable time to examine it, and, if dissatisfied with it, to have rejected it. Of course, he could not have pursued this course if the policy had been examined when taken. There was some reasonable ground for his dissatisfaction with the policy. As it was drawn there existed a question of its having been drawn in the terms of the application which he had signed. That question was of sufficient apparent importance, from the face of the papers, to suggest to the company the advisability of requiring Hocker to sign a correction slip, and of sufficient importance to be made an issue in this case. Certainly when he, or someone for him, came to read the policy, at the time of taking it from the bank, or in a reasonable time thereafter, he had the right to express dissatisfaction with it for the above reason. As long as he had this right—and it is clear that he had it when he was killed—he was not bound. Under these circumstances we are unable to escape the conclusion that the company was not bound; and there was no completed contract so far as the evidence in this record shows. (Summers v. Mutual Life Ins. Co., Wyo., 75 Pac. Rep., 937, 66 L. R. A., 812.)

This conclusion renders the other questions in the case of no importance. It is apparent that the case, on the facts relating to the question herein discussed, has been fully developed. Therefore, we grant this

motion for rehearing, and judgment will be here rendered in favor of appellant, instead of remanding the cause for another trial. Reversed and rendered.

*Reversed and rendered.*

Writ of error refused.