## CAMDEN FIRE INS. CO. v. HILL.
### (No. 710–4274.)

(Commission of Appeals of Texas, Section A.
Oct. 28, 1925.)

**1. Appeal and error ⬥1185—Mistake in finding of Court of Civil Appeals on material issue held to authorize changed finding.**

Under Rev. St. 1911, art. 1593, giving Court of Civil Appeals power to ascertain such matters of fact as may be necessary to proper exercise of jurisdiction, mistake in finding of Court of Civil Appeals as to date of letter, which was material on issue as to time of defendant's knowledge of default judgment, which was shown by district court's order reciting agreement that error existed, authorized finding that defendant was without knowledge of default judgment on date of filing answer, which finding is conclusive, and any error in refusing to permit filing papers or showing mistake as part of transcript is immaterial.

**2. Judgment ⬥138(3)—Facts and finding held to show defendant without negligence in failing to move for new trial during term of judgment.**

Finding that defendant had no knowledge of default judgment before filing answer, together with facts showing defendant first heard of judgment on March 30th, when it wrote plaintiff's attorney asking explanation of supposed mistake, and received answer on April 3 after expiration of term of court, sufficiently acquits defendant and counsel of negligence in failing to move for new trial during term of default judgment.

**3. Time ⬥10(1)—Where last day of term is on Sunday, it is not counted.**

Where last day of term of court expires on Sunday, such day is non juridicus, and not to be counted.

**4. Judgment ⬥138(3)—Facts held to disclose sufficient legal excuse for failing to move for new trial during term.**

Where service was made on agent after termination of his association with defendant, and new citation was served on March 7 after notice to plaintiff that old citation was insufficient, from which defendant's counsel could reasonably believe that new pleadings had been filed, and judgment could not be entered on old pleadings, and that no answer was necessary until April 3, but old pleadings were filed with new citation on which judgment was taken on March 10, there was sufficient legal excuse for not moving for new trial during term of court expiring April 2.

**5. Judgment ⬥17(9)—Default judgment without service held void on direct attack.**

Default judgment based on service on defendant's agent after termination of agency *held* without service and void, in view of Rev. St. 1925, art. 2050, when attacked in direct proceedings, and right to maintain bill to review judgment is not conditioned on appeal or review through writ of error which would not have disclosed void character of judgment because of false recital.

**6. Judgment ⬥145(4)—Pleading and proof, failing to show completed contracts, presents a meritorious defense to default judgment.**

In action to recover loss on fire insurance policy, pleading and proof, showing merely an offer to make a contract subject to acceptance by company but no acceptance, in fact fails to show a completed contract, regardless of scope of agent's authority, and presents a meritorious defense to a default judgment.

**7. Insurance ⬥141(1)—Pleading and proof, failing to show completed contract of insurance, makes plea of estoppel on company to deny agent's authority inapplicable.**

Where pleading and proof showed that no contract for insurance had ever been entered into, but that application for insurance was conditional on acceptance by company which was never made, a plea that company was estopped to deny agent's authority was inapplicable.

**8. Insurance ⬥92—Proof held to negative estoppel by company to deny agent's authority to make insurance contract.**

Proof that insurance company failed to receive application for insurance or premiums and knew nothing of them until after loss, and that agent had no authority to make oral contracts of insurance nor to insure automobiles, which was known to plaintiff, negatived estoppel by company to deny agent's authority, since provision of bond requiring agent to pay return commissions on policies, where written by him or his agent, relied on by plaintiff, referred only to written policies and other than those on automobiles, and since Rev. St. 1911, art. 4961, making a party soliciting insurance agent of company, does not confer power on supposed agent which he does not otherwise have.

**9. Insurance ⬥92—Estoppel to deny apparent authority not sustained, where previous acts of agent showing authority not known to plaintiff.**

In action to recover loss on fire insurance policy on automobile, claim that defendant was estopped to deny that agent had apparent authority to make contract *held* not sustained by evidence of previous contract by agent, where it was not known to plaintiff so that he could not have relied on it, and where such contract was in harmony with real agency and inconsistent with apparent agency.

**10. Insurance ⬥103 — Pleading and evidence held to show no cause of action on contract of insurance.**

In action on policy, pleading and evidence of plaintiff that application and premiums were sent by agent to defendant company and accepted, but policy was never delivered, and, if policy was not issued, then agent failed to give notice of company's failure to accept insurance, as promised, do not show any cause of action on contract of insurance against company, save for damages on agent's promise to notify plaintiff.

---

⬥For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**11. Insurance ☞103 — Promise by agent to plaintiff on application for insurance held personal, giving no cause of action against company where· repudiated by it.**

Where plaintiff made application to defendant's agent for insurance on automobile, and made loan secured by mortgage on automobile from bank of which agent was in control, promise by agent to write plaintiff if everything was not all right with respect to insurance was personal to plaintiff, agent, and bank, and, in absence of full disclosure to defendant company and acquiescence by it, such promise was voidable on part of defendant, and, on repudiation of promise, plaintiff had no right of action for damages' for its breach.

**12. Insurance ☞103—Proximate cause of injury from failure to obtain insurance held to be failure to act by agent of both parties.**

Where agent, soliciting insurance on plaintiff's automobile, promising to notify him if application was not accepted, acted both as agent for defendant company and plaintiff, complete failure to notify and breach of promise by agent is not proximate cause of injury to plaintiff in failing to obtain insurance, but proximate cause is failure to act by a party who was equally agent of both plaintiff and defendant.

**13. Appeal and error ☞1153—Judgment may be affirmed or set aside on showing of sufficient cause, and new judgment rendered, where former judgment purported to determine all matters in controversy.**

Procedure by bill of review, though not provided by statute except in special cases under Rev. St. 1911, arts. 2026, 3203, 4300, has been allowed in exercise of blended law and equity jurisdiction, and, on showing of sufficient cause, a former case will be re-examined on merits, and judgment affirmed or set aside, and such relief granted as is warranted by pleading and proof, so that where judgment determined all matters in controversy, was so treated by Court of Civil Appeals and both parties, correct judgment may be rendered on appeal.

**14. Equity ☞446—Remedy by bill of review not applied, where error apparent on record.**

Remedy by bill of review does not apply in case of error apparent on record, since statute allowing review on appeal and writ of error affords adequate remedy.

Error to Court of Civil Appeals of Seventh Supreme Judicial District.

Action by F. E. Hill against the Camden Fire Insurance Company. Judgment for plaintiff by default was, on defendant's petition in nature of bill of review, affirmed (264 S. W. 123), and defendant brings error. Reversed, and judgment rendered.

E. G. Senter, of Dallas, for plaintiff in error.

Weeks, Morrow & Francis, of Wichita Falls, for defendant in error.

### Statement of the Case.

NICKELS, J. Hill sued H. R. Denny and Camden Fire Insurance Company (alleged to be a foreign corporation, domicile undisclosed) March 16, 1921. Denny was supposed to be "local agent" of the company at that time and whatever service there was on the original petition was upon him personally and through him as "local agent" on March 21, 1921. Hill sued for $1,500, and interest, the amount of a fire insurance policy which it was claimed had issued, or should have is·sued, on his automobile or for damages in equal amount on the theory that he had signed an application for the policy and Denny had forwarded it (with the premium) to the company's state agents for "acceptance," etc., and Denny had promised, in that connection, to notify Hill if the company did not accept the application, upon which promise he relied, and because thereof he did not procure insurance from some other company. Denny was alleged to have authority to "solicit" insurance, take applications, receive premiums, etc.

. No answer was filed up to that time, and on March 10, 1922, judgment by default (the loss, etc., being proved) was taken against·the company for the amount sued for; Denny being discharged from liability.

March 7, 1922,' alias citation was issued for the Camden Fire Insurance Association and served upon it, through its state agents at Houston, subsequently and prior to March 26, 1922. On March 28, 1922, the' association filed its original answer, without knowledge of the default judgment. On March 30, 1922, it learned that a default judgment of some kind had been taken, but its attorney (on account of previous communications between him and Hill's attorneys, etc.) believed the judgment to' be against Denny alone, but by letter of that date (mailed at Dallas) to Hill's attorneys at Wichita Falls, he called attention to the information received about the judgment, suggested its error, and inquired as to the facts. The term at which the judgment was taken expired by operation of law Sunday, April 2, 1922. Hill's attorneys replied to the inquiry just noted by letter dated April 3, 1922.

In June, 1922, the association filed an amended answer and as a part of it reconvened in damages, actual and exemplary, for the alleged wrongful and malicious taking of the default judgment. This pleading was substituted by a further amended answer and plea in reconvention November 11, 1922. On the same day (November 11, 1922) the association filed a pleading styled bill of review, praying notice, and praying for the setting aside of the default judgment on various grounds, amongst them the ground that Denny was not its agent in any capacity on March 21, 1921 (when the original service was had); all relations between him and the association having terminated January 28, last. Hill replied to the bill of review on

the same day, and later in the day filed a supplemental reply to it.

The pleadings cover 69 pages of the transcript and with much iteration and elaboration they set forth the contention of the association and of Hill. It is sufficient here, we think, to summarize them by saying that Hill's claim of right to recovery, as originally set up, plus estoppel, and his prayer for recovery, were continued throughout his pleadings, and finally repleaded as basis of affirmative relief (as well as to show lack of "meritorious defense" against the default judgment on the part of the association) in reply to the bill of review, and by saying that the association generally and specially denied the making of any contract of insurance by Denny (as its agent or otherwise) and Hill, denied Denny's authority to make any such contract or promise as was sued on, denied that it had ever received the application or premium or that it ever heard of Hill's claim until after the fire, denied acceptance in fact of Hill's application, etc. The pleadings of both parties showed that the bank at Iowa Park, of which Denny was cashier, was substantially interested in the proposition of securing insurance and that Denny acted, in part as its agent, in substantial portions of the transaction out of which Hill's application grew, etc., and the association specially pleaded this (with its lack of knowledge thereof) as one reason why Denny had no authority to represent it in the matter and as a reason why whatever contract with, or promise to, Hill there was voidable as to it.

The case made by the various pleadings was tried in connection with trial of the bill of review December 4, 1922, evidence was heard on all issues, and judgment rendered denying relief sought in the bill of review and "confirming." etc., the default judgment of March 10, 1922. The association appealed, and on April 3, 1924, the Court of Civil Appeals, Seventh District, rendered an opinion of affirmance. 264 S. W. 123.

That opinion embraced a material finding of fact to the effect that the association had knowledge of the default judgment as early as March 21, 1922, and that finding related to (and was based upon) a certain letter whose date, as shown in the statement of facts, was March 21, 1922. This date, however, was incorrectly stated. The letter bore date March 27, 1922, and could not, under any circumstances, have been received by the association's attorney prior to March 28, 1922. The error had not been discovered by any of the parties until the opinion was filed. Thereupon the association asked leave to file in the Court of Civil Appeals motion for certiorari to correct the record. Time was given by that court to prepare the motion, and also to take such proceedings as were appropriate in the trial court to establish the error, etc. These proceedings were had, and a transcript thereof offered for filing in the Court of Civil Appeals. The transcript showed a judgment by the district court, reciting an agreement "in open court" that the error existed, and decreeing that the letter referred to did bear date of March 27, 1922, and that the error in the statement of facts was not due to the negligence of either party, etc. The Court of Civil Appeals declined to allow the transcript to be filed as a correction of the original record on appeal, for reasons stated in its opinion on rehearing. 264 S. W. 123. But that opinion contains a finding of fact that when the association filed its original answer on March 28, 1922, it did so without knowledge of the default judgment.

The case is in the Supreme Court on assignments properly raising the matters discussed below.

## Opinion.

[1] 1. Article 1593, R. S. 1911, vests in Courts of Civil Appeals the power "to ascertain" (upon "affidavit or otherwise as by the courts may be thought proper") such "matters of fact as may be necessary to the proper exercise of their jurisdiction." Like provision is made for the Supreme Court in article 1525. That power, probably, inheres in a court without legislative fiat. Seiter v. Marschall, 105 Tex. 205, 147 S. W. 226; Cruger v. McCracken, 87 Tex. 584, 30 S. W. 537. The mistake in showing the date of the letter occurred in respect to a material issue. Its subject was a "matter of fact" essential "to the proper exercise" of appellate jurisdiction. The power to hear and determine is not "properly exercised" if conceded error of fact may influence, or contribute to influence, its direction. The paper offered to the Court of Civil Appeals embraced a certified copy of the district court's order reciting an agreement ("in open court") that the error exists. The fact, therefore, was shown as efficiently as it could have been shown "by affidavit," and the manner of its disclosure was such as that it could well have been deemed proper. In virtue of the terms of article 1593, the Court of Civil Appeals was authorized "to ascertain" the error of fact in that way (as it did, manifestly) and thereupon to make the finding (incorporated in the opinion on rehearing) to the effect that the association was without knowledge of the default judgment when, on March 28, 1922, it filed its original answer. That finding of fact is conclusive, and any supposed error in refusing to permit the paper to be filed as a part of the transcript and presented more formally is immaterial.

[2, 3] 2. That finding, and the facts upon which it rests, inevitably result in acquitting the association, and its counsel, of negligence in respect to failure to move for new trial during the term of the default judgment. That term expired April 2, 1922. That day, being Sunday, was non juridicus. · Hanover

Fire Insurance Co. v. Shrader, 89 Tex. 35, 32 S. W. 872, 33 S. W. 112, 30 L. R. A. 498, 59 Am. St. Rep. 25; Shearman v. State, 1 Tex. App. 215, 28 Am. Rep. 402, and need not be counted. The Court of Civil Appeals made no finding as to the exact time when the association first learned of the judgment, but the record fairly shows it was on March 30, 1922, for on that day its attorney wrote a letter to Hill's attorneys in which he declared he had just received the information from the district clerk. When he received this information, and for good reason, he believed that the clerk's statement was either wholly erroneous or that it referred to a judgment against Denny alone. Pursuant to this belief, on March 30, 1922, he wrote and mailed to Hill's attorneys a letter, calling their attention to previous correspondence, conveying the clerk's message and its probable error, and requesting an answer. Those attorneys did not reply until April 3d (the first day of the new term), when they wrote him a letter saying that judgment had been taken against the company, etc., on March 10, 1922, and saying, also, that they had written him to that effect on March 12, 1922. The record, without serious dispute, shows that the attorney did not receive the letter claimed to have been written March 12, 1922, and, as shown, the finding of the Court of Civil Appeals is conclusive that he did not get it. In view of the conditions by which they were circumstanced, the association and its attorney did all that was required of them during the term. Those conditions will now be further stated.

[4] The record shows that whatever service existed was had upon Denny (or through him) in March, 1921, after his relations with the association had terminated in January. The first time that the association, or its attorney, learned that a suit was pending, was early in 1922. On February 8, 1922, Hill's attorney wrote a letter to Mr. Senter, supposed to be attorney for the association, and asked him to waive formalities with respect to securing the deposition of Denny and to cross-interrogatories. Mr. Senter replied, saying he knew nothing about the case; that no service had been had on the association; and that he was without authority, prior to service, to represent the association, etc. Hill's attorneys replied March 3, 1922, to the effect that they were "much surprised to know that service was not obtained on this company"; that they were "unable to locate the original court papers," requesting an appearance and waiver of citation and suggesting, also, they would have citation issued and served. To this Mr. Senter replied that he did not have authority to waive, etc. No other communications passed until March 26, 1922, etc., when Mr. Senter wrote Hill's attorneys a letter to the effect that the new citation (issued March 7, 1922) had been served and sent to him, and that he was then in a position to cross the interrogatories to Denny, etc. No reply was made to that letter. The new citation which was served upon the state agents was accompanied by certified copies of the Hill's first amended and first supplemental petitions; the clerk's certificate showing they had been filed March 7, 1922.

It is true that a bill of review is an equitable proceeding and that equity's benedictions pass by those who slumber and come to the vigilant. It turns no kindly face, however, to the overly vigilant, who may (inadvertently or otherwise) have lulled their adversaries into false security or those who conjure with mistakes; nor does it estimate conduct with the unyielding measures of an exact science. It allows something for elemental nature, and its standard is the conduct of the ordinarily prudent man rather than the cold perfection of the automaton. Friendly negotiations, as to procedure, looking forward to ultimate trial, were in progress. The communication stated a mutual understanding of lack of process and that it was yet to be secured. Alias citation to that end issued (March 7, 1922), and, when served, it declared, in terms unmistakable to a lawyer, that new pleadings had been filed, and therefore a judgment could not rightly be entered on the old pleadings, even if there had been prior service. With that declaration was coupled the assurance that the association need not answer until April 3, 1922. Meckel v. State Bank (Tex. Civ. App.) 256 S. W. 668. If Hill's attorneys discovered error in the previously expressed understanding that there was no service, and thereupon desired to change the course of conduct previously suggested and insist upon judgment on the old service, they ought to have given notice. Counsel for the association had a right to expect that much. There was nothing about the situation to warn an ordinarily prudent man that judgment was to be taken, or was taken, on March 10th. In our opinion, the association, therefore, disclosed "a sufficient legal excuse" for not having moved for new trial during the term, within the sense of Hough v. Hammond, 36 Tex. 657; Kimmell v. Edwards (Tex. Civ. App.) 193 S. W. 363; Johnson v. Templeton, 60 Tex. 238; and Republic Supply Co. v. Weaver (Tex. Civ. App.) 235 S. W. 684, cited, contra, by defendant in error.

[5] 3. The "default judgment" is shown to be void, and not merely voidable, for that Denny was not agent at all at the time of the purported service on March 21, 1921, and had not been since January 28, 1921. Service on, or through him, therefore, was no more than service upon, or through, any other stranger, and could not bind the association. Article 2050, R. S. 1925; Levy v. Roper, 113 Tex. 356, 256 S. W. 251, and authorities there cited. A judgment without service, of course, is void, and must be so declared whenever it is attacked in a direct proceed-

ing, at least within the periods of limitation and where rights of third parties have not intervened. A false recital may give it passport otherwise, but in a direct attack, such as this, its mask is torn away and its vicious nature, once exposed, dissolves the chimera of apparent obligation. Because of the false recital which that judgment embraced, its absolutely void character was not disclosed on the record; hence appeal or review through writ of error would have been ineffectual. Prior invocation of useless legal remedies is not a condition precedent to the right to maintain a bill of review.

[6] 4. In our opinion, the association alleged, and with the aid of Hill's pleading and proof, conclusively established a "meritorious defense." We would not be understood as agreeing to the proposition that showing of a "meritorious defense" is always essential to an attack upon a judgment which is wholly void or subject to be so declared in a direct proceeding. That question is not here. But, on account of its relation to the "meritorious" disposition of the case made, the "defense" will be examined at some length.

The association averred that no contract of insurance, of any kind, was made by Hill and Denny. In any event, if an agreement was reached as between them as is said, that agreement was personal to them; Denny neither having nor assuming to exercise power to bind the association.

Hill and Denny are the only witnesses who testified in respect to what took place between them on the occasion pleaded. Since Hill's rights, necessarily, are defined as well as restricted by his allegations (reproduced in reply to the bill of review), the testimony of these two witnesses need not be restated at length. There is nothing in that testimony to dispute the specific averments made by him, although certain conclusions stated in his pleadings are affirmatively disproved. We therefore summarize the allegations. They are: (a) Denny "took his application upon the form in blank" used for such purposes, which "application" was sent by Denny to, and accepted by, the association; it being understood that "when the policy of insurance was issued it should be delivered to the bank * * * to be held" by it as collateral. (b) He relied upon Denny "to secure the policy of insurance, and, in the event of failure on the part of the company for any reason to issue the insurance, it was then agreed that the plaintiff would be notified." (c) Denny informed him "there would be no question but what the policy would be issued, as he knew the company would accept the application." (d) Denny did not notify him of any failure of the company "to accept said insurance." (e) The policy which he purchased "as aforesaid" was "to be and remain" in force "for a period of one year from June 15, 1920." (f) When he took the "application," Denny also received from him

the premium of $33.75, which he sent to the company, and which the company and Denny retained. Hill's evidence could not be given an effect greater than is signified by his allegations, and we may therefore confine the discussion to particulars wherein the testimony falls short of the averments.

In his testimony, Hill said: He went to Denny for a loan and, in that connection, told him he wanted insurance. He signed some "insurance papers," the nature of which he does not know. Denny did not tell him the papers had to be sent away (and he did not say, as he had alleged, that Denny forwarded the application and premium). Denny was to keep the policy at the bank "when it returned." Denny told him "he would get the policy" "for him." It was stated and understood that "if anything is not all right," that is to say, if the application should not be accepted, Denny "would write him a letter." He paid Denny $33.75, the amount of the premium. He was never notified that the "insurance" had not been accepted, and the "premium" was never returned.

Denny testified that he "made out the usual application and forwarded same to Cravens, Dargan & Roberts," state agents; that the policy "was to be made payable" to the bank as its interest appeared. Denny did not say that he forwarded the premium or any part of it, but he showed that he deposited it in his own "insurance account" to his own credit in the bank at Iowa Park.

It is plain, therefore, that what Hill and Denny agreed upon was not a contract of insurance (oral or written) in præsenti. What they did agree to was this: Denny should forward the "application" to the state agents for acceptance, or not, and, if it was not "accepted," Denny would notify Hill of the company's action. This was not a contract; it was merely the beginning of negotiations, or efforts, to secure one, and that, too, with the definite understanding that the company might, or might not, in the future agree to it, and with definite provision, also, for notification on the happening of the contingency of nonacceptance. Life Ins. Co. v. Rudolph, 45 Tex. 454; Merchants', etc., Underwriters, v. Parker (Tex. Civ. App.) 190 S. W. 525, 526, 527; Ætna Life Ins. Co. v. Hocker, 39 Tex. Civ. App. 330, 89 S. W. 26 (writ refused); Nat. Union Fire Ins. Co. v. Patrick (Tex. Civ. App.) 198 S. W. 1050; Lee v. Life Ins. Co., 15 Fed. Cas. 158.

As a consequence, if the negotiations ever led to a contract of insurance, it did so because of something additional (and subsequent) to what had been done and agreed upon in the transaction between Hill and Denny. That could only be and is alleged to be, acceptance in fact by the company. But the proof is conclusive the other way. It is true Denny said he forwarded the application to Cravens, Dargan & Roberts. He does not say he forwarded the premium or

any part of it. But if he did "forward" the "application," it was never received by the state agents or by the company. Nor was the premium or any part of it received by the state agents or the company. The first time the state agents ever heard of the matter, or any part of it, was after the fire had occurred. It results, therefore, that Hill's so-called "contract," expressly made conditional in the beginning, remained contingent and incomplete to the end. The pleadings show only an offer to make a contract so far as Hill and Denny were concerned, and an acceptance in fact by the company. The proof shows the offer to make the contract, and failure to complete it, and expressly negatives acceptance in fact. Life Ins. Co. v. Rudolph; Merchants', etc., Underwriters, v. Parker; Ætna Life Ins. Co. v. Hocker; Nat. Union Fire Ins. Co. v. Patrick; and Lee v. Life Ins. Co., supra. And this renders inapplicable the cases cited in support of Hill's contention that a contract was made. These cases are: Great Southern Life Insurance Co. v. Dolan (Tex. Civ. App.) 239 S. W. 236; Brotherhood of Railway Trainmen v. Cook (Tex. Civ. App.) 221 S. W. 1049; Connecticut Fire Ins. Co. v. Fields (Tex. Civ. App.) 236 S. W. 790; Austin Fire Ins. Co. v. Brown (Tex. Civ. App.) 160 S. W. 973. And this is true, regardless of the scope of Denny's agency. The true measure of his power is immaterial here, because the proof shows the minds of the parties never met in a present agreement of insurance. Possibility of that union is inhibited by the condition of the company's acceptance and by the fact of nonacceptance. Hill sued upon a contract in præsenti. He cannot recover upon it, because none was made, conceding, arguendo (only), the agent's authority to make it if he had so desired.

[7] The fact that no contract of insurance was made, disposes of Hill's plea of estoppel on this branch of the case. That plea assumes the existence of an oral contract of insurance, and it is interposed to preclude the association's denial of the authority of Denny to make such a contract. The relevant allegations are: (a) The association "held out the said H. R. Denny as its agent, fully empowered to make oral contracts of insurance against fire loss"; Denny having theretofore "made such oral contracts of insurance which were fully accepted" by the association, and this was commonly done, also, by other agents "with the knowledge and consent" of the association. (b) Denny, at the time, "advised this plaintiff that said insurance would go into effect at noon of the following day"; this being stated within "the scope of his agency, either actual or apparent." (c) Hill relied thereupon, and would have taken out other insurance "if he had known his policy of insurance was not acceptable to" the association. But, as already shown, by other and specific averments and by his testimony, as well as by the testimony of Denny, it is conclusively established that Denny was to send in the application for approval of the insurance, and specific provision was made for notification in the event it was not accepted by the company. The application never reached the state agents, who had to approve it before insurance could become effective, and there was no acceptance of any kind. Hence the association could not be estopped to deny Denny's authority to make an oral contract of insurance, since no contract was ever made. The plea is inapplicable.

[8] But if there was basis in pleading or fact for it, the proof negatives the estoppel. The state agents never heard of the application or premium until long after the date of the loss. The association, therefore, did not receive or retain the premium or application for the intervening period, or for any other period. Denny had no actual authority to make an oral contract, and this Hill knew because he expressly averred his power to be this: Denny "at said time was authorized and empowered to solicit insurance business for" the association "and was authorized to take applications and accept premiums for fire insurance on automobiles." Johnson, one of the state agents, and Denny are the only witnesses who testified about Denny's actual authority, and their testimony is undisputed that the authority was limited to the solicitation of insurance, to be followed by written applications actually forwarded to the state agents for approval or rejection and to collect premiums after the policies should be issued or, conditionally, pending their issuance. As to insurance on automobiles, he had no other authority.

[9] Hill relies upon a stipulation in a bond given to the state agents, and not to the association, requiring him to "pay the return commissions upon any and all return premiums or policies of insurance companies represented by said managers" (i. e., state agents) "whether said policies were written by him or by his agent of said companies." This stipulation, however, is ineffective for the purpose for various reasons, amongst them, these: It refers, in any event, to "written" (and not to oral) "policies." And, when read in the light of the undisputed testimony, it refers to "policies written by him" on property other than automobiles. He had authority to write policies on certain classes of property, but his authority to do so with respect to automobiles was specifically withheld. And the stipulation includes the further requirement that he "comply with all instructions contained in his commissions of authority." This affirmative showing of lack of actual authority is not destroyed by the terms of article 4961, R. S. 1911. That statute was enacted for a definite special purpose, and its provisions do not operate to confer power (actual or apparent) on a supposed

agent which he does not otherwise have. Hartford Fire Ins. Co. v. Walker, 94 Tex. 473, 61 S. W. 711; Delaware Ins. Co. v. Harris, 26 Tex. Civ. App. 537, 64 S. W. 867 (writ refused). Nor is the charge of "holding out" with "apparent authority" sustained; on the contrary, it is disproved. In his testimony, Hill said nothing whatever about Denny's authority, actual or apparent, or about anything that Denny had done to lead him to believe he had power to make an oral (or any other kind) of insurance contract, save the one transaction in which Denny took his written application. He produced a witness (Golden) who. on direct examination, said that Denny, in 1920, "wrote insurance for the Camden Fire Insurance Company, and wrote a policy on my car." On cross-examination, he said:

"I made application to Mr. Denny for a policy and he wrote it. I don't remember that he sent it to Houston. I applied to Mr. Denny for insurance, and I know that I got the insurance from Mr. Denny. I don't recall having signed any application."

On redirect, he said:

"I cannot remember the exact particulars of getting that policy, but according to my recollection this policy came through just like all other policies had. I applied to him for insurance and so far as I know no one else had anything to do with it. I got the policy from Mr. Denny, and paid him a premium."

On recross, he said:

"I never examined that policy to see who issued it to me. I would not deny that I sent the firm of Cravens, Dargan & Roberts an application for the policy and that they issued the policy and sent it to Denny to be delivered to me, but I say I don't remember anything like that."

Golden himself shows that he does not know whether or not he merely signed an application which had to be, and was, forwarded to the state agents for approval and issuance of the policy; and the undisputed testimony of one of the state agents is that Golden's application was thus taken, forwarded, and the policy issued. The transactions between Golden and Denny (which are the only ones offered in support of the claim of "apparent authority") disprove the contention, besides, as is manifest, they had no relation whatever to oral contracts. And it is nowhere shown that Hill knew anything about the Golden-Denny transactions, or any others. He could not have changed his position for the worse, or have relied upon "apparent authority" therefore. Yet he must have done so before there could, in any event, be an estoppel.

The true nature of the agency once being shown, its field cannot be extended by implications "from the habit and course of dealing between the parties," because the evidence shows that "course" was in harmony with the real agency and wholly inconsistent with the supposed "'apparent" one, nor by estoppel, because of that harmony, and because, in any event, "agency by estoppel can be invoked only when the third person knew and relied on the conduct of the principal." 31 Cyc. 1219, 1220. Here there was in fact no inconsistent conduct by the principal; but, if there was such, it is not shown that Hill knew of it or relied on it.

[10] The justice of the views above expressed is recognized, we believe, throughout Hill's pleading and evidence. While he alleged that the application and premium were, by Denny, sent to the state agents and the "application was accepted," nevertheless and in the same connection he said that the policy was "never delivered" to him, and if, in fact, the policy was not "issued," then "the said H. R. Denny did not give to the plaintiff any notice of the failure on the part of the company to accept said insurance" as he had promised to do. After the fire (he averred) he made proof of loss and in that connection demanded "that he be paid such insurance, and in the event the insurance was not in effect that then he be paid the amount of damages suffered by loss of said car and for failure to secure insurance with other companies." His suit, in form, was upon the theory that a contract of insurance was in effect and upon the alternative of damages for breach of the promise to notify him of nonacceptance. Except for. the allegation that the company itself received the application and premium and "accepted," his pleadings are not sufficient to show any cause of action, save upon Denny's promise to notify. As already shown, the averment of "acceptance" is conclusively disproved. That leaves in the case only his asserted right to damages.

[11] Hill's pleading and evidence demonstrate that, in material respects, Denny, in making the promise, was the agent, and acted as the representative, of the bank at Iowa Park and of Hill himself. The petition shows that Hill owed the bank money, for which it took his note secured by a chattel mortgage on the automobile, and that, under agreement between him and Denny, as the bank's officer and agent, the "policy" when it should be "issued" was to be held by the bank (with the note and mortgage) "for its protection, and loss payable to the bank in event of destruction of said automobile by fire before the indebtedness should be paid." Hill testified that Denny "was in active charge of the bank" and that he went to Denny and told him he "wanted a loan" on the car, "and at the same time, the insurance." Denny, for the bank, in response, made the loan, took the note and mortgage and the application for insurance, and agreed with Hill to "write him a letter" "if anything is not alright" (to use Hill's language). The

promise to "write the letter" is the sole promise relied upon which has any support in the evidence. In the petition, Hill said that he and Denny "were at said time very friendly" and that he "relied upon him to secure the policy of insurance"; Denny promising to notify him if it should not be issued. The note referred to was for $750, executed by Hill for the loan made at that time, and this loan included $700 to be applied on the purchase price of the car and $50 to cover interest, premium on the contemplated policy, and fees to be paid in filing the mortgage; the portion allocable to the premium being deposited to Denny's credit in the bank. Denny was the cashier of the bank, "was in active charge of it," and personally handled this transaction for it and for Hill. That the bank and Denny, as its stockholder and officer, had substantial interests involved, cannot be doubted; nor can it be doubted that Hill (outside his status as a prospective "insured") had a corresponding interest. Because of these interests, at least in substantial part, Denny undertook (for Hill and the bank) to secure an insurance policy, and undertook, further, to "write Hill a letter if anything is not all right." The promise now relied upon by Hill was therefore personal to Hill, Denny, and the bank, at least in a most important sense, and whatever consideration underlay it was likewise personal to them. With good reason it could be held, we think, that, in respect to the promise, Denny acted exclusively as the agent of the bank and of Hill; but it is to us plain that he was as much the agent of those parties as he was of the insurance company under any possible view of the record. Neither his "double agency" nor the promise itself was ever communicated to the insurance company. His relation to the other parties to the transaction suspended his power to represent the company, in the absence of full disclosure to and acquiescence in the situation upon the part of the company, and whatever contract, or promise, he made was voidable at its election. Mechem on Agency, § 1206; Ætna Ins. Co. v. Richey (Tex. Civ. App.) 206 S. W. 383; notes, 9 L. R. A. (N. S.) 1084; 49 L. R. A. (N. S.) 972. The association never heard of the transaction or any part of it until long after the fire, and then it promptly repudiated. For this reason, the promise itself, and its breach, could not give Hill right of action for damages.

[12] And, further, the personal relation created between Hill and Denny, if it was exclusive, as a matter of course, was the source of the former's injury. Even if it was not exclusive of any relationship between Hill and the company, it was as much the cause of the injury as was the supposed connection between Hill and the company (made by the promise), and it is not shown that the one relation would have existed without the other. Hence it could not be said that the

company's promise to notify (if Denny's statement can be attributed to it, and as to this we express no opinion), and the breach of the promise by Denny, is the proximate cause of the injury. The cause was failure to act by a person who was either his own agent exclusively, or who, at most, was as much his own agent as he was the agent of the company. There cannot be, therefore, basis for recovery of damages against the association.

[13, 14] 5. Except for special classes of cases contemplated in articles 2026, 3203, and 4300, R. S. 1911, procedure by bill of review is not provided in our statutes. But from an early day the remedy has been allowed and enforced by the courts in the exercise of their blended law and equity jurisdiction. In this adoption and use many of the incumbering technicalities of the procedure in other jurisdictions have been abolished. For sufficient cause shown, a former case will be "re-examined on its merits," i. e., "retried," and thereupon the former judgment will be set aside, and such relief will be granted as is appropriate and warranted by pleading and proof "on the whole case." Mussina v. Moore, 13 Tex. 8; Seguin v. Maverick, 24 Tex. 526, 76 Am. Dec. 117; Overton v. Blum, 50 Tex. 417; McMurray v. McMurray, 67 Tex. 665, 4 S. W. 357; Browning v. Pumphrey, 81 Tex. 163, 166, 16 S. W. 870; Robbie v. Upson (Tex. Civ. App.) 153 S. W. 406; Kruegel v. Cobb, 58 Tex. Civ. App. 449, 124 S. W. 723, 726 (writ refused). Or, if the "new trial" shows justice was accomplished in the antecedent proceeding, the former judgment will be allowed to stand according to its import and be, thus, affirmed. The effect of the judgment of "affirmance," in such a case, is to cut off and finally determine the matters in any way set up, or which could have been set up, in the "re-examination on its merits." The remedy thus adopted, of course, does not apply in case of "error apparent" on the record (Seguin v. Maverick, supra; Talbert v. Barbour, 16 Tex. Civ. App. 63, 40 S. W. 187; Kidd v. Prince [Tex. Civ. App.] 182 S. W. 725, 730), since the statutes allowing review on appeal and by writ of error have afforded an adequate remedy there.

The judgment now under consideration, therefore, determined all matters in controversy between the parties. It was treated as having that effect by the Court of Civil Appeals, and in his briefs the defendant in error urges that result for it. Like position is taken by plaintiff in error. That being true, and the record being such as has been indicated, the judgment which ought to have been given in the district court should be rendered here.

We recommend, therefore, reversal of the judgments of the district court and of the Court of Civil Appeals, and the rendition of judgment vacating the default judgment of

date March 10, 1922 (in so far as plaintiff in error is concerned), and discharging plaintiff in error from any and all liability on account of the transactions sued upon.

The "default judgment" as between defendant in error and H. R. Denny, in our opinion, should be affirmed.

CURETON, C. J. Judgments of the Court of Civil Appeals and district court against the plaintiff in error are reversed and rendered in favor of the plaintiff in error; but as against H. R. Denny they are affirmed.